MARGARET WHITEHEAD, WHO SUES, &c., v. EMIL MOCH ET AL.

Submitted December 5, 1913—Decided March 11, 1914.

1. The condition of an insolvent bond requiring that the insolvent debtor, if refused a discharge, shall surrender himself immediately thereafter to the sheriff or keeper of the jail of the county, is fully complied with where the debtor takes immediate steps to surrender himself to the sheriff or some person authorized by law for that purpose.

2. If, at the time he is refused a discharge, the sheriff is not there to receive him, the debtor is entitled to a reasonable time to look for him before he adopts the alternative by going to jail.

On defendant's rule to show cause.

Before GUMMERE, CHIEF JUSTICE, and Justices PARKER and KALISCH.

For the rule, *Charles E. S. Simpson.*

*Contra, Alexander Simpson.*

The opinion of the court was delivered by

KALISCH, J. The plaintiff's action against Emil Moch and his sureties, the defendants, was founded on an alleged breach of an insolvent bond given by Moch, an insolvent debtor, to the plaintiff in insolvency proceedings. The breach alleged was that the insolvent debtor upon being refused his discharge by the court failed "to surrender himself immediately thereafter to the sheriff or keeper of the jail of said county" as required by the terms of the bond.

A verdict was directed for the plaintiff. The record before us shows that the hearing in the insolvency proceedings was not terminated until after six o'clock in the evening. The court then announced that the debtor would be refused a discharge. The sheriff's office was closed and the sheriff gone.

Immediately after his discharge was refused the debtor turned to one John Maxwell, a court officer, and known as a deputy sheriff, who was in attendance at the time, and said, "What will I do now?" whereupon he replied, "You are in custody of the sheriff." Maxwell then took the debtor into custody, put him in a room in the court house where he was kept for an hour, and then proceeded with him to the sheriff's office which was found still closed, and thereupon he took the debtor to the residence of the under sheriff, and after having some conversation with the under sheriff, took the debtor back to the court house and thence to jail, where a new bond was given by the debtor, and he was then released. It also appears that on the return from the under sheriff's dwelling to the court house, Maxwell, with the debtor, stopped at a restaurant to get something to eat. It is not denied that the debtor was in custody of Maxwell from the time he was discharged until he was delivered to the jail.

The plaintiff contends that this was not a surrender in compliance with the condition of the bond, in that the surrender was not personally to the sheriff or keeper of the jail of Hudson county, immediately after the debtor was refused a discharge; that the surrender of the debtor to the county jail three or four hours after the debtor's discharge was refused was not an immediate surrender as required by the statute, and as construed in *Sozio* v. *Giuliano,* 45 *Vroom* 731, and later in *Braden* v. *Rosenstone,* 54 *Id.* 251. The facts of the latter case are not analogous to those under consideration. But the principle enunciated therein is applicable. The surrender contemplated by the statute is an immediate one after the refusal to discharge. A construction of the term "immediately thereafter" to mean "directly," "at once," does not impose any hardship upon debtors, nor is the debtor called upon to perform the impossible. Its plain meaning is that the debtor is required to take immediate steps after the announcement of the refusal to discharge is made, to comply with the condition of the bond, by surrendering himself to the sheriff or the keeper of the county jail. If at the time he is refused a discharge the sheriff is not there to receive him, he is entitled to

a reasonable time to look for him, before he adopts the alternative and goes to jail. The case under consideration well illustrates the doctrine. When the debtor was refused a discharge it was six o'clock in the evening. The sheriff was not in the court room to receive the debtor. A constable, detailed by the sheriff, was there in attendance upon the court. He was also ostensibly there upon the sheriff's business. Immediately after the court refused to discharge the debtor, the debtor immediately took steps to surrender himself to the sheriff. He applied to the constable who told him that he was now in custody of the sheriff, and after confining him for an hour or so in a room, took him to the sheriff's office, but it was closed. He then took the debtor to the residence of the under sheriff and it is evident that by the direction of the under sheriff the debtor was taken back to the court house and thence to jail, by the constable, as deputy sheriff.

It can make no difference whether Maxwell had the authority, in the first instance, to receive the debtor for the sheriff or not, since it appears that the debtor in taking the necessary steps to make a surrender, the sheriff being absent from the court room, was entitled to go to the sheriff's office to make his surrender there, and finding the office closed, was entitled to seek out the under sheriff for the purpose in view. Because he did this in company with Maxwell does not detract from the fact that he had taken immediate steps to surrender himself to the sheriff. It was not for any fault ascribable to the debtor that his surrender at the jail was not accomplished until three or four hours after he was refused a discharge.

The rule to show cause will be made absolute.